**Reilly Tar and Chemical Corporation, Now Known as The Reilly Corporation, Appellant, v. Francis J. Lewis, Appellee.**

**Gen. No. 42,602.**

Heard in the third division of this court for the first district at the April term, 1943.

Opinion filed December 13, 1944. Rehearing opinion filed May 18, 1945. Released for publication June 8, 1945.

See also case reported on p. 84, ante.

W. M. KEELEY, of Chicago, for appellant.

A. B. MANION, of Chicago, for appellee.

ON REHEARING.

MR. PRESIDING JUSTICE BURKE delivered the opinion of the court.

This is the third appeal in this case. Our opinion in the first appeal (No. 40458), filed October 25, 1939, is reported in 301 Ill. App. 459. The opinion on the second appeal (41697), filed January 7, 1942, was reported in abstract form (312 Ill. App. 654). We are now requesting that it be published in full. [See 326 Ill. App. 84] After the last remandment the case went to trial before the court and a jury on September 23, 1942, resulting in a verdict against plaintiff. The court overruled plaintiff's motion for a new trial and entered judgment on the verdict. Plaintiff appeals.

Plaintiff urges that the court erred in refusing to permit it to introduce evidence of what was said and done at the conference with the representatives of the Government, attended by Mr. Orr, Mr. Ryan and Mr. Lux, on May 25, 1928. The court should have followed our opinion reported in 301 Ill. App. 459, wherein we held that this testimony was competent. Defendant states that when a case is reversed and remanded generally, only the legal principles announced by the appellate tribunal control in any future proceedings. In our first opinion we clearly stated that the trial court erred in refusing to admit the exhibits and proffered testimony. Furthermore, we stated that the testimony of Mr. Orr as to what was said and done at the conference with the representatives of the Government was competent. On the retrial of the case it was the duty of the court to follow the directions so given. The conference with the Government men was one of the constituent facts

in the transaction; was in contemplation of the parties at the hotel conference; and was so connected in point of time and interest with the hotel conference as to be part of it. Orr, acting under power of attorney for plaintiff, and Ryan and Lux, acting as attorneys for defendant, went from the hotel directly to the conference with the Government men. The parties to this action were there by their representatives. What was done there was a part of the transaction at the hotel and continued that transaction. It was part of the *res gestae*. *Res gestae* has been defined as those circumstances which are the automatic and undesigned incidents of a particular litigated act and which are admissible when illustrative of such act. The true inquiry is whether the declarations are a verbal act, illustrating, explaining or interpreting other parts of the transaction of which they are then a part, or merely a history of a completed past affair. In one case they are competent; in the other they are not. It has been held that the test of the admissibility of evidence as a part of the *res gestae* is whether the act, declaration or exclamation is so intimately interwoven or connected with the principal fact or event which it characterizes as to be regarded as a part of the transaction itself, and whether it clearly negatives any premeditation or purpose to manufacture testimony. We are of the opinion that the testimony of Mr. Orr was admissible under the *res gestae* rule. We disagree with the contention of defendant that the proffered evidence was repetitious, immaterial and irrelevant to plaintiff's case in chief. Defendant, by his attorneys Ryan and Lux, was present at the conference with the Government agents. Attorneys Ryan and Lux at that time were in the discharge of their duties and transacting the business of their principal, Mr. Lewis. Defendant urges that the conversation between Orr and representatives of the Bureau of Internal Revenue was in the presence of the agents of the defendant, both of

whom were dead at the time of the trial, and that it has been consistently held by the courts of this State that conversations with the deceased agent of a principal sought to be charged are not admissible in evidence as against the principal. The cases cited by defendant in support of this proposition are based on section 4 of the Evidence Act (par. 4, ch. 51, Ill. Rev. Stat. 1943 [Jones Ill. Stats. Ann. 107.070]). In the case at bar plaintiff seeks to enforce a contract allegedly made with defendant. Mr. Orr is not a party litigant, nor is he a party to the contract. Section 4 of the Evidence Act provides that a party to an action who has contracted with an agent of the adverse party, the agent having since died, shall not be a competent witness as to any admission or conversation between himself and such agent, unless such admission or conversation with the deceased agent was had or made in the presence of a surviving agent or agents of such adverse party. This section is not applicable and may not be invoked to exclude the testimony of Mr. Orr and the cases cited by defendant in support of the point are inapplicable.

Plaintiff maintains that the court erred in refusing to allow it to prove that the stipulations shown in plaintiff's exhibits 4 to 10, entered into by attorneys for plaintiff and for defendant with Mr. Charest, acting for the Government, were made pursuant to the discussion and conference with the Government officials on May 25, 1928. Defendant insists that the court ruled correctly, for the reason that the question called for the conclusion of the witness, invaded the province of the jury and was neither material nor relevant. Whether the stipulations were made pursuant to the discussion or conference, was a question of fact. Mr. Orr knew the fact. It was a material and relevant fact and a constituent part of the settlement transaction. It was a part of the *res gestae*. The question did not call for the conclusion of the witness on a question of fact; it did not invade the province of

the jury, and it was material and relevant. Defendant calls attention to the fact that in our last opinion (No. 41697) we held that a question directed to Mr. William Lewis as to whether in delivering certain checks to the Collector of Internal Revenue he relied on an alleged agreement between defendant and plaintiff, called for the conclusion of the witness and invaded the province of the jury, and urges that following our reasoning in that opinion we should sustain the action of the trial court in declining to allow Mr. Orr to answer the question under discussion. In our last opinion we held that Mr. Lewis was not conversant with the situation and that any information he had was necessarily derived from others. Mr. Orr was fully acquainted with the situation and had personal knowledge thereof. Plaintiff urges that the court erred in refusing to permit witness Boynton to testify regarding his instructions to Hayes to draw up the journal entry called exhibit 801, and regarding the instructions and statements of Hunter to Boynton as to that journal entry; in excluding the testimony of Hayes as to the instructions of Boynton regarding the preparation of the exhibit; and in excluding the testimony of witness Hayes concerning the exhibit. Plaintiff asserts that these statements were verbal acts, essential to an understanding of the transaction of which they were a part. In our opinion in case No. 41697 we stated that the exhibit and the testimony in the depositions of Boynton and Hayes were admissible as rebuttal evidence. We are now of the opinion that the exhibit and the proffered testimony were admissible in rebuttal and are also admissible as part of the *res gestae*. It will be observed that plaintiff's sixth and final check in payment of the taxes fixed in the orders of redetermination, was dated February 15, 1929. Plaintiff's exhibit 26, also referred to as exhibit 801, was made in March 1929, a month after the payment of the final instalment, to set up the account on the books of plaintiff. We agree with plaintiff

that the court erred in excluding the proffered testimony of Boynton and Hayes.

Plaintiff urges that a question to Hunter as to opening up negotiations with Lewis for the purchase of the stock of the Lewis Manufacturing Company, and a question to the same witness as to provisions in the contract, defendant's exhibit 3, being discussed with witness before being prepared for signatures of the parties, called for immaterial and irrelevant answers. These matters are not in dispute. However, we are of the opinion that the questions were proper. Plaintiff objects to the testimony of defendant that he guaranteed many accounts. Plaintiff's objection to this testimony should have been sustained. We agree with plaintiff that the questions to Orr as to an agreement by the Engineering Corporation to assume tax liability for the income taxes of plaintiff, were immaterial and irrelevant. Engineering Corporation did not agree to assume the tax liability of plaintiff and the questions to Orr along that line only tend to confuse. Plaintiff states that the court erred in permitting the questions to Orr as to the meaning of the memorandum of May 17, 1928, defendant's exhibit 20, and the proposed settlement "not acquiesced in by the Government." In our opinion these questions, shown on pages 379, 381 and 407 of the record, were proper. Defendant read into the record from a deposition plaintiff's direct examination, cross-examination and redirect examination of Hunter by plaintiff, and thereby Hunter was made defendant's witness. Plaintiff objects to the question propounded to Hunter as to who he was representing in the negotiations preceding the preparation of defendant's exhibit 3. The objection to this question should have been sustained. The objection to the question to Hunter as to whether there was anyone in the conference of February 1928, representing or purporting to represent plaintiff, should have been sustained. Plaintiff also objects

to questions put to Orr as not cross-examination or material or competent, shown in record 328, record 331, and records 327, 328, 329, 330, 331, 332, 333 and 334. In our opinion there was no error in admitting this testimony. Plaintiff complains of testimony giving conclusions and opinions as to matters in controversy and attempting to interpret the Washington Hotel transactions. We are of the opinion that the question to Hunter as to his going to the Washington conference as a representative of the Engineering Corporation, record 310, was improper; that the question to Hunter as to whether he was acting at that time as the vice president of Engineering Corporation, was improper; and that the questions to Hunter asking his interpretation of plaintiff's exhibits 14 and 15, the Washington memorandum, were improper. The question to Hunter as to his statement to Learnard of what Hunter thought about ratification or approval by the board of the Engineering Corporation of the signing of the agreement at Washington, was proper. Plaintiff asserts that testimony by defendant as to what he had been told by Ryan and Lux about the conference with the Government men following the hotel meeting of May 25, 1928, constituted hearsay and conclusions. We are of the opinion that this testimony was admissible. Plaintiff further urges that defendant's exhibits 10, 11, 16, 17, 18 and 21 were immaterial. We are of the opinion that these exhibits were admissible.

Plaintiff urges that the court erred in refusing to give its instructions 1, 2, 3, 4a, 5, 6, 7, 20, 22 and 23. We are of the opinion that the court should have given plaintiff's instructions 1, 2, 3, 4a, 6, 7 and 20. Plaintiff states that its instruction 5, which was refused, informing the jury as to the measure of damages and the method of arriving at it, should have been given. In our opinion the court should not give an instruction on the measure of damages or the method of arriving at

it. The contract, on that subject, is unambiguous. If the jury finds for the plaintiff, then the amount of recovery, under the contract, will be one half of the total of the payments made by plaintiff and by defendant and his brother, less the amount paid by defendant and his brother, provided the latter two shall not pay more than $315,000, plus interest. This is a simple matter of arithmetic and should be found by the court on the proof then in the record as to what payments were made. The payments are of record and there should be no dispute thereon. However, should a legitimate question of fact arise as to the payments, the parties would have a right to have such dispute submitted for the determination of the jury under proper instruction. Plaintiff's tendered instruction 8, which was refused, among other things, dwelt on the subject of interest. In this court plaintiff does not argue that the court erred in declining to give this instruction. Should plaintiff press its claim for interest under its allegation of an unreasonable and vexatious delay, it may be that an issue as to whether there was an unreasonable and vexatious delay should be submitted to the jury. This phase of the case has not been argued before us. As to instruction 22 which was refused, we agree that there is no evidence in the record to support any rescission of the agreement between plaintiff and defendant, and that the instruction should have been given. As we said in our previous opinion (No. 41697), the record does not show that there was any fraud. Hence, plaintiff's instruction 23 should have been given. In complaining of the eighth given instruction, plaintiff states that it confines the inquiry to May 25, 1928 and excludes other transactions which are a part of the field of inquiry. Plaintiff complains of the ninth instruction because it submits a claim of defense for which there is no proof. As we have stated, there is no proof of a rescission or cancellation of the contract between plaintiff and defend-

ant and this instruction should not have been given. In speaking of the tenth instruction read by the court, which was on the ratification and adoption theory, plaintiff points out that there was no instruction given informing the jury what constitutes ratification and adoption. On a retrial, our direction that plaintiff's instruction 3 be given, will cure the objection to the tenth given instruction. Plaintiff also complains that the nineteenth instruction, read by the court, in effect, submits to the jury the claim that defendant entered into a contract with Engineering Corporation and that there is no evidence supporting such claim. In our opinion the only issue in the case is as to whether the contract was between Engineering Corporation and defendant or plaintiff and defendant. Under that issue the instruction was proper.

Plaintiff declares that counsel for defendant was guilty of improper and prejudicial conduct during the trial. The argument to the jury by counsel for defendant referring to the thousands of women and children in our community who have benefited by the liberality and generosity of defendant, was improper. Plaintiff also urges that counsel for defendant was guilty of improper and prejudicial conduct in removing from defendant's exhibits 7 and 8 "material parts thereof after the same were admitted in evidence and before they were delivered to the jury on its retiring to consider and deliberate upon its verdict." In our opinion the sheets attached to defendant's exhibits 7 and 8 were introduced into evidence and should have gone to the jury. They are all part of the same exhibits and are important evidence bearing on defendant's liability.

Finally, plaintiff insists that the verdict is manifestly against the weight and clear preponderance of the evidence. Defendant owned 85 per cent of the stock of plaintiff corporation and his brother owned the remaining 15 per cent. They sold all of the capital

stock of plaintiff to Engineering Corporation for eleven million dollars plus. The stock was delivered on or about September 1, 1927. When the stock was delivered the number of directors of plaintiff corporation was increased from three to five. After the transfer of the stock the directors of plaintiff were Hunter, Learnard, Brannigan, a doctor or engineer, whose name is not given, and defendant. At the time of the sale of the stock defendant was chairman of the board of directors and his brother was president. Defendant remained as chairman until July 1929. Hunter directed the financial affairs of plaintiff. After the transfer of the stock defendant had no financial interest in plaintiff corporation. From then on the stock was owned by Engineering Corporation. It is obvious that after the transfer of the stock and the election of the new directors, Lewis had no power of direction of the affairs of plaintiff. Under the contract in evidence as defendant's exhibit 3, providing for the sale of the stock from defendant to Engineering Corporation, the sum of $151,283.37 was to be included in the liabilities of plaintiff in arriving at the net current assets, and plaintiff was to pay ''any additional federal taxes which have been or may be determined hereafter by the United States Government up to an amount of $394,342.34.'' Any amount of taxes determined and assessed for the years 1917 to 1926, inclusive, over and above the amounts as set forth were to be paid by defendant. Plaintiff was not a party to the contract, defendant's exhibit 3. The claims made by the Government against plaintiff were $511,339. The sum of $151,283.37 and $394,342.34 is $545,625. Thus, if the Government claims against plaintiff had been conceded without contest, defendant would not have been obligated under the contract (defendant's exhibit 3) to pay anything. The Government had assessed against the defendant, individually, $219,019 in taxes and $129,780 in penalties, a total of over $348,000. There

was also a prospective assessment against defendant, individually, for 1927 upon $1,579,100 of the assets of plaintiff which were transferred to defendant in 1927. The evidence shows that this possible assessment would be $315,820. On March 15, 1928 defendant filed his income tax return for the calendar year 1927. At the time of the transactions involved in the instant case, this return had not been audited by the Government. Engineering Corporation was not interested in the assessment made against the defendant, individually, nor in the prospective assessment for 1927 against him individually, nor was Mr. Hunter or plaintiff corporation. Plaintiff was interested only in the assessment made against it. In the view of plaintiff's attorney Mr. Orr, plaintiff had a splendid defense to present before the Board of Tax Appeals. This defense was that the so-called early dividends were not withdrawals from the assets of plaintiff, or had been promptly replaced. In the Spring of 1928 defendant was subject to claims by the Government of $348,000, including taxes, fraud and penalties, and to a prospective liability of $315,820, or a total liability of $664,619, plus interest. In plaintiff's exhibit 11, the memorandum of March 1, 1928, signed and filed with the Commissioner of Internal Revenue by the attorneys for plaintiff and defendant and his brother, the following proposal was made: ''The Lewises pay a tax in the year 1927 of at least 20 per cent on $1,579,100.91. As far as the Lewises are concerned, this is in addition to all other taxes which may properly be due for any of the years under consideration.'' In his letter of March 30, 1928, Mr. Andrew J. Ryan, defendant's attorney, proposed that defendant and his brother would pay the Government $315,820.18. There was no controversy between Engineering Corporation and the Government. Engineering Corporation, as the owner of all the stock of plaintiff, was interested in the taxes to be paid by plaintiff, as whatever deficiency assess-

ment that would have to be paid by plaintiff would reduce the value of the stock of plaintiff owned by Engineering Corporation. Mr. Orr was a member of the New York law firm of White and Case. This firm represented Engineering Corporation. However, Mr. Orr was not the attorney in the transaction involving the sale of the stock. He specialized in income tax law and was called in later by Engineering Corporation. At the request of Mr. Hunter, who managed the financial affairs of plaintiff, a power of attorney dated January 9, 1928 was given by plaintiff, empowering Orr to appear before the Treasury Department and to represent plaintiff in any and all matters bearing on income, excess profits, war taxes and any and all other tax matters covering the taxable years of 1916, 1917, 1918, 1919, 1920 and 1921, with full power and authority to do and perform all and every act and thing whatsoever requisite and necessary and to make any compromise, adjustment or settlement of any tax matter pertaining to any of these years. This power of attorney was executed on behalf of plaintiff by Mr. W. M. Lewis, its president. Thereafter, Mr. Orr represented plaintiff in connection with the tax matters. There is no doubt that Mr. Orr was called into the case by Engineering Corporation. However, he acted as attorney for plaintiff. In our opinion, under the contract for the purchase of the stock, it was not necessary to secure defendant's consent to the hiring of additional counsel to represent plaintiff in the tax matters. The brief filed in behalf of plaintiff and defendant with the Commissioner of Internal Revenue on March 3, 1928 and which was prepared by Mr. Orr, with the assistance of Mr. Ryan, supports the contention of plaintiff as to the conversations in the conferences held in Mr. Orr's office in February 1928. We are satisfied that the evidence supports plaintiff's contention that in the conferences in February 1928 the parties agreed to present the

cases to the Government agents and to apportion the resulting payments, regardless of how the assessments were made. In the conferences in New York the parties did not come to an agreement as to the allocation of payments. In the New York conferences in February 1928 the parties agreed to pool their interests. The agreement as to the allocation of the payments was made at the Washington Hotel conference on May 25, 1928. Apparently, that was the purpose of the conference. Following the conference the attorneys representing plaintiff and defendant went before the Government agents. There is no doubt that Mr. Orr, as attorney for plaintiff, in the conference with the Government men, acted on the assumption that an agreement had been made to divide the payments evenly. On July 31, 1928 written stipulations were signed by the attorneys acting for the taxpayers, under which orders were entered, establishing the taxes on the deficiency assessments and petitions on appeal then pending. In the settlement with the Government it was agreed that the amount of the ''dividends'' or ''Moline account checks'' in the sum of $1,579,100.91 would not be taxed to defendant or his brother for 1927. The so-called fraud penalties were also removed.

Continuing its argument that the judgment is contrary to the manifest weight of the evidence, plaintiff asserts that defendant's testimony attempting to prove the rescission point cannot be given any credence. Defendant's testimony as to his alleged talk with Mr. Learnard is directly controverted by the testimony of Mr. Learnard, a disinterested witness. Defendant testified that a week or ten days after the Washington agreement he talked with Hunter and Learnard at New York; that he then had waivers and that after the talk he authorized the filing of the waivers. The waivers are dated June 20, 1928. They were sent to the Commissioner of Internal Revenue by Mr. Orr on June 22, 1928. The letter of Mr. Ryan dated

June 20, 1928 states that he delivered the waivers to Mr. Iden of the general counsel's department, and Mr. Orr's letter of June 22, states that Mr. Iden was "here at this time." This indicates that Mr. Iden received the waivers from Mr. Ryan on June 20, 1928 and brought them to Mr. Orr's office on June 22, 1928. Each waiver recited that the taxpayer "hereby waives the right to file a petition with the United States Board of Tax Appeals under Section 274(a) of the Revenue Act of 1926, and consents to the assessment and collection of a deficiency in tax" for certain years and in certain amounts "as indicated in the statement of the Internal Revenue Agent." The documents called "waivers" were both waivers and consents to the assessment and collection of deficiency taxes in certain definite sums. The taxpayers having appealed to the United States Board of Tax Appeals, the Commissioner of Internal Revenue was without authority to enter into any stipulation to settle the tax disputes until after the taxpayers had executed waivers. The tentative agreement made between the Government representatives and the attorneys for plaintiff and defendant and his brother on May 25, 1928, following the signing of the Washington hotel memorandum, would not become binding on the Government and the taxpayers until carried into effect by the execution of the waivers and the stipulations. The waivers were one of the steps in the transaction for settlement of the tax controversies, and after they were signed and filed, the general counsel for the Bureau of Internal Revenue and Orr, Ryan and Lux, attorneys for plaintiff and defendant and his brother, signed the stipulations, which were filed with the United States Board of Tax Appeals on July 31, 1928. The orders of redetermination were entered by this board on the same day and each recites that under "written stipulation signed by counsel for the parties in the above entitled proceeding and filed with the board on July 31, 1928,

it is ordered and decided that upon redetermination there is a deficiency'' of a certain sum for a certain year. The evidence shows that the tentative agreement of May 25, 1928 between representatives of the Commissioner of Internal Revenue and the taxpayers, was carried out as to the promise by the Government representatives on the one hand and by the taxpayers on the other hand. The dispute involved in the instant case arose after the stipulated payments had been made to the Government. Ryan and Lux continued to represent defendant to and including the signing of the stipulations and the entry of the orders redetermining the taxes. They represented defendant in making the settlement with the Government. If defendant talked with Mr. Hunter before authorizing Ryan to send the waivers along, Hunter would have informed Orr at once that the Washington arrangement was not going through, and Orr would never have sent through to the Commissioner the waivers which constituted the first necessary step in establishing the tax obligation of the plaintiff corporation. This, in turn, was based upon the agreement made at the conference with the Government men on May 25, 1928, which was an essential step in the waiving of plaintiff's defenses that Hunter and Orr considered were worth $250,000 to the company, and Orr would never have signed the stipulations dated July 30, 1928 on which the orders of redetermination of the taxes against plaintiff were entered. Mr. Hunter testified that defendant talked to him about misrepresentations at Washington in the Fall of 1928. It is interesting to note that Hunter's letter of April 27, 1929 asserts the existence of ''the agreement dated May 25, 1928,'' and the payment of the taxes thereunder. Mr. Hunter would not have sent such a letter if there had been any rescission of the agreement in June 1928, as claimed by defendant. Defendant knew that plaintiff would not have waived its defenses excepting in reliance on

the agreement to divide the total amount of the taxes. Notwithstanding defendant's claim of fraud, he authorized the filing of the waivers. He did that without any written memorandum of rescission or any scrap of paper to support his contention. There is no support in the record for defendant's claims that the agreement of May 25, 1928 was "supplemental to and in lieu of the provisions contained in the contract for purchase of stock of plaintiff company by the International Combustion Engineering Corporation," and "that the effect of said agreement changed the method of arriving at the net current assets." We are satisfied that the judgment is contrary to the manifest weight of the evidence.

In his petition for rehearing defendant states that if this court is of the opinion that the verdict of the jury on all issues is contrary to the manifest weight of the evidence, then after three trials and three reversals we should enter an appealable order and not send the case back for a fourth trial "that can only result in another reversal." Par. 2(c) of sec. 75 of the Civil Practice Act (par. 199, ch. 110, Ill. Rev. Stat. 1943 [Jones Ill. Stats. Ann. 104.075, subpar. (2)(c)]) reads:

"In any case heard and determined in the trial court upon actual trial in which the Appellate Court upon appeal from the final judgment or decree entered in the cause in the trial court reverses said judgment or decree and remands the cause for a new trial or hearing, and in which the party in whose favor the trial court's judgment or decree was rendered shall present to and file with the Appellate Court an affidavit stating that he will be unable on a future trial or hearing to adduce other or additional evidence, facts or circumstances than were adduced in the trial court and expressly waiving the right to a new trial or hearing and consenting and requesting that the portion of the judgment of the Appellate Court remanding the cause for

a new trial or hearing be deleted and stricken from the judgment of the Appellate Court, then that court upon motion shall amend its judgment by striking out the portion thereof remanding the cause for a new trial or hearing. Thereupon it shall be competent for the Supreme Court to grant leave to appeal from said final judgment of reversal for its review and determination with the same power and authority in the case, and with like effect, as in other cases in which leave to appeal from the final judgments of the Appellate Courts is authorized in this section.''

Should defendant desire to avail himself of the above provision, he should file a motion and affidavit in accordance with the paragraph quoted from sec. 75 of the Civil Practice Act.

The judgment of the circuit court of Cook county is reversed and the cause is remanded with directions to proceed in a manner not inconsistent with these views.

*Judgment reversed and cause remanded with directions.*

KILEY and LUPE, JJ., concur.